UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

FOUZIA JADA,

                Plaintiff,

     -against-

COSTCO WHOLESALE CORPORATION and
MBA – VERNON BOULEVARD, LLC,

              Defendants.

------------------------------------------------------------------------ X

**RESPONSE TO RULE 56.1 STATEMENT OF MATERIAL FACTS**

1:21-cv-00194

Pursuant to Rule 56.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts, the following is the response of Plaintiff FOUZIA JADA (hereinafter "Plaintiff") to Defendants Costco Wholesale Corporation and MBA-Vernon Boulevard, LLC's (hereinafter, collectively the "Defendants") Rule 56.1 Statement of Material Facts dated September 23, 2022.

1.      On August 16, 2018, plaintiff was shopping at the Costco in Long Island City, located at 3250 Vernon Boulevard, when she allegedly slipped on blueberries on the floor. Pl. Resp. to First Set of Interrogatories, Ex. G1, ¶ 4; Pl. Dep. Tr., Ex. H, pp. 6:17-23, 29:13-22, 41:14-16.

**RESPONSE:**      Undisputed.

2.      The alleged incident occurred at approximately 7:20 p.m. See Member First Report, Ex. O; Pl. Resp. to First Set of Interrogatories, Ex. G, ¶ 2.

**RESPONSE:**      Undisputed.

3.      On August 16, 2018, plaintiff was shopping at Costco with her friend, Tamara Aroutyan. Pl. Dep. Tr., Ex. H, pp. 22:23-25; Aroutyan Dep. Tr., Ex. I, pp. 6:11-24, 7:24-8:3.

**RESPONSE:**      Undisputed.

4. The blueberries were on the floor near the cashiers. Pl. Resp. to First Set of Interrogatories, Ex. G, ¶ 3; Pl. Dep. Tr., Ex. H, pp. 25:13-18, 26:2-5; Aroutyan Dep. Tr., Ex. I, pp. 12:12-17, 14:17-15:5.

**RESPONSE:**      Undisputed.

5. Plaintiff and Ms. Aroutyan had already reached the cashier before the alleged accident. Pl. Dep. Tr., Ex. H, pp. 28:7-29:5; Aroutyan Dep. Tr., Ex. I, pp. 10:10-20, 11:4-12:11.

**RESPONSE**:      Undisputed, but notes that Plaintiff and Ms. Aroutyan did not see the blueberries on the floor when they initially approached the cashier. (Defendants' Ex. H, p. 31; Defendants Ex. I, p. 16-17). Further, Plaintiff was in the process of paying for her goods at the cash register, when she was informed by a Costco employee that there was a certain sale on items which allowed her to obtain an item for free. She then proceeded to retrieve the item from the rear of the Costco, and as she arrived back at the register, she slipped and fell on blueberries scattered on the floor mere feet from the subject register and Costco employee. (Defendants' Ex. H, p. 28, 30, 33; Defendants' Ex. I, p. 14-18)

6. In order to get to the cashier before the accident, plaintiff and Ms. Aroutyan necessarily walked through or immediately adjacent to the area where the accident occurred minutes later. Pl. Dep. Tr., Ex. H, p. 30:9-24; Aroutyan Dep. Tr., Ex. I, pp. 10:10-20, 11:23-12:25, 13:17-21, 14:17-15:5.

**RESPONSE:**      Disputed. Plaintiff testified that she did not walk through the area in question when initially engaging with the cashier. (Defendants' Ex. H, p. 30)

7.     The accident occurred on plaintiff's second time through the area. Aroutyan Dep. Tr., Ex. I, pp. 10:10-20, 11:4-19, 11:23-12:25; Pl. Dep. Tr., Ex. H, pp. 28:17-29:5, 35:11-24

**RESPONSE:**          Disputed. See response to statement #6.

8.     Neither plaintiff nor Ms. Aroutyan know how the blueberries involved in the alleged incident got onto the floor. Pl. Dep. Tr., Ex. H, pp. 32:7-22, 33:24-34:5; Aroutyan Dep. Tr., Ex. I, pp. 16:23-18:6, 19:24-20:6.

**RESPONSE:**          Undisputed, but upon information and belief, the blueberries were dropped
                       on the floor by either a customer or an employee and were not caused to
                       drop onto the floor by Plaintiff or Ms. Aroutyan. (Defendants' Ex. H, p. 39).

9.     Plaintiff did not see any blueberries on the floor before the accident. Pl. Dep. Tr., Ex. H, pp. 30:25-32:6, 33:24-34:5.

**RESPONSE:**          Undisputed.

10.     Plaintiff first saw blueberries on the floor after she had been helped up off of the floor after the accident. Pl. Dep. Tr., Ex. H, pp. 38:20-39:3.

**RESPONSE:**          Disputed. Plaintiff did not testify that the "first" time she saw the blueberries was after she was helped up off the floor following her fall. Pl. Dep. Tr., Ex. H, pp. 38:20-39:3.

11.     Ms. Aroutyan did not see any blueberries on the floor before the accident Aroutyan Dep. Tr., Ex. I, pp. 16:23-18:6. She only saw them on the floor after plaintiff fell. Aroutyan Dep. Tr., Ex. I, pp. 16:23-18:6.

**RESPONSE:**          Undisputed.

12.     Neither plaintiff nor Ms. Aroutyan knew how long the blueberries had been on the floor prior to the accident. Pl. Dep. Tr., Ex. H, pp. 32:7-22, 33:24-34:5; Aroutyan Dep. Tr., Ex. I, pp. 16:23-18:6, 19:24-20:3.

**RESPONSE:**    Disputed. Both Plaintiff and Ms. Aroutyan testified that the blueberries appeared crushed and dirty, and therefore appeared to have been present on the floor for a significant amount of time prior to Plaintiff's accident. (Defendants' Ex. H, p. 32; Defendants' Ex. I, p. 31).

13.    Plaintiff fell when she was approximately two to three yards from the cashier, where many other customers were waiting in line. Pl. Dep. Tr., Ex. H, pp. 35:11- 24; Aroutyan Dep. Tr., Ex. I, pp. 13:25-14:10, 14:17-15:23, 32:2-5.

**RESPONSE:**    Disputed as to the statement that "many other customers were waiting in line." That statement was not explicitly attested to. Pl. Dep. Tr., Ex. H, pp. 35:11- 24; Aroutyan Dep. Tr., Ex. I, pp. 13:25-14:10, 14:17-15:23, 32:2-5.

14.    The floor where the accident occurred is gray. Costco 2021 Dep. Tr., Ex. J, pp. 48:25-49:5; Aroutyan Dep. Tr., Ex. I, p. 18:11-16.

**RESPONSE:**    Undisputed.

15.    There is no evidence in the record that Costco created the alleged dangerous condition or otherwise caused the blueberries to become located on the floor. Pl. Dep. Tr., Ex. H, pp. 32:7-9; Aroutyan Dep. Tr., Ex. I, pp. 16:23-18:6, 20:4-6; see generally, Costco 2021 Dep. Tr., Ex. J, and Costco 2022 Dep. Tr., Ex. K.

**RESPONSE:**    Disputed. This statement is improper, as it calls for a legal conclusion. Upon information and belief, and the evidence on record, Costco indirectly caused the blueberries to become located on the floor, as the store manager was fully aware the customers, prior to and at the time of the accident, would typically eat produce such as blueberries while walking to store and prior to

checking out, and did little to nothing to stop such actions. (Defendants' Ex. K, pp. 41-42).

16.     There is no evidence in the record that MBA created the alleged dangerous condition or otherwise caused the blueberries to become located on the floor. Pl. Dep. Tr., Ex. H, pp. 32:7-9; Aroutyan Dep. Tr., Ex. I, pp. 16:23-18:6, 20:4-6; see generally, Costco 2021 Dep. Tr., Ex. J, Costco 2022 Dep. Tr., Ex. K.

**RESPONSE:**     Disputed. This statement is improper, as it calls for a legal conclusion. See response to statement #15. Additionally, MBA did not part with the control of the subject premises. In fact, Defendants' "Daily Floor-walk Safety Inspection" (Defendants' Ex. P) form includes a stamp with the names of both Defendants, "COSTCO / MBA".

17.     There is no evidence in the record that Costco or MBA had actual notice of the blueberries on the floor. See generally Exs. H-K, P.

**RESPONSE:**     Disputed. This statement improperly calls for a legal conclusion. See responses to statement numbers 15 and 16.

18.     There is no evidence in the record that Costco or MBA had constructive notice of the blueberries on the floor. See Generally Exs. H-K, P.

**RESPONSE:**     Disputed. This statement is improper, as it calls for a legal conclusion. Furthermore, the evidence on record demonstrates that the Defendants, at the earliest, inspected the subject accident area an hour prior to the accident, and the testimony on record only speaks to general cleaning practices, which is insufficient to demonstrate a lack of constructive notice. (Defendants Ex. J, pp. 34-35; Ex. J., pp. 41-47)

19.    Costco Member Service employees conduct hourly floor-walks, which include checking whether the floors are clean and clear. Costco 2021 Dep. Tr., Ex. J, p. 34:16-24; Costco 2022 Dep. Tr., Ex. K, pp. 38:6-39:5, 42:17-43:5. Floor-walks include the area near the cashiers. Costco 2022 Dep. Tr., Ex. K, pp. 39:17-21,

**RESPONSE:**         Undisputed, but the evidence on record demonstrates that the Defendants, at the earliest, inspected the subject accident area an hour prior to the accident. (Defendants Ex. J, pp. 34-35; Ex. J., pp. 41-47)

20.    The floor walk sheet from August 16, 2018, does not show any indication of blueberries on the floor prior to the accident. See Costco 2022 Dep. Tr., Ex. K, pp. 42:17-43:5, 48:14-49:2; Floor-Walk Sheet, Ex. P.

**RESPONSE:**         Undisputed but note that an instance such as blueberry spillage would likely not be documented, according to Defendants' own testimony. (Defendants' Ex. K, pp. 38, 42, 43, 50-51, 54).

21.    Costco regularly cleaned the front end of the warehouse, which includes the area where alleged incident occurred. Costco 2021 Dep. Tr., Ex. J, pp. 31:10-32:10, 32:21-25, 33:9-15; Costco 2022 Dep. Tr., Ex. K, 54:7-13.

**RESPONSE:**         Disputed. The accident itself, coupled with the fact that the blueberries were crushed and dirty, and the evidence which indicates that the area was inspected at the earliest an hour prior to the accident, indicates that such cleanings were not "regular." (Defendants Ex. J, pp. 34-35; Ex. J., pp. 41-47; Defendants' Ex. H, p. 32; Defendants' Ex. I, p. 31)

22.    Any Costco employee can clean up a spill. Costco 2021 Dep. Tr., Ex. J, p. 36:3-8; Costco 2022 Dep. Tr., Ex. K, 17:10-23, 54:7-13.

**RESPONSE:**        Undisputed.

The Property and Ground Lease

23.    MBA-Vernon Boulevard LLC ("MBA") owned the property at 3250 Vernon Boulevard, Long Island City, NY ("Property"), on August 16, 2018. Answer to Amended Complaint, Ex. D, ¶¶ 5, 7; Thypin 2021 Aff., Ex M, ¶¶ 1, 3.

**RESPONSE:**        Undisputed.

24.    As of August 16, 2018, Costco occupied the Property pursuant to a Ground Lease with MBA. See Answer to Amended Verified Complaint, Ex. D, ¶¶ 5-7; Ground Lease, Ex. N; Costco 2021 Dep. Tr., Ex. J, p. 11:18-23; Thypin 2021 Aff., Ex. M; Thypin 2022 Aff, Ex. N. 42:17-21.

**RESPONSE:**        Undisputed.

25.    Costco, as Tenant, entered into a Ground Lease with Manhasset Bay Associates relating to the Property, on or about April 12, 1996. Thypin 2021 Aff., Ex. M, ¶ Thypin 2022 Aff., Ex. M, ¶¶ 2-4; Answer to Amended Verified Complaint, Ex. C, ¶ 6.

**RESPONSE:**        Undisputed.

26.    Ownership of the Property was transferred from Manhasset Bay Associates to MBA-Vernon Boulevard LLC in 1997. See Thypin 2021 Aff., Ex. M, ¶ 3.

**RESPONSE:**        Undisputed.

27.    The Ground Lease remained in full force and effect following the transfer of ownership of the Property and was in effect as of August 16, 2018. See Thypin 2021 Aff., Ex. M, ¶¶ 2-3; Thypin 2022 Aff., Ex. N.

**RESPONSE:**        Undisputed.

28.     MBA is an out-of-possession owner. Thypin 2021 Aff., Ex. M, ¶¶ 2-3; Ground Lease, Ex. N, p.1 and §§ 2.01, 10.02.

**RESPONSE:**     Disputed. This statement improperly calls for a legal conclusion. Additionally, the evidence demonstrates that MBA did not relinquish full control of the subject premises to Costco. In fact, Defendants' "Daily Floor-walk Safety Inspection" (Defendants' Ex. P) form includes a stamp with the names of both Defendants, "COSTCO / MBA". Further, Section 23 of the Lease, entitled "Inspection of Premises," explicitly permits the landlord with access to inspect the Premises without notice in case of emergency, and with notice any time between 9AM and 5PM Monday through Friday to "ascertain Tenant's compliance with the terms and conditions of this Lease." (Defendants Ex. N. Section 23).

29.     MBA did not retain control over the premises. Thypin 2021 Aff., Ex. M, ¶¶ 4-7; Ground Lease, Ex. N, §§ 6.07, 10.02.

**RESPONSE:**     Disputed. See response to statement #28.

30.     MBA did not retain a right to reenter the Premises to conduct repairs. Ground Lease, Ex. N, §§ 6.07, 10.02.

**RESPONSE:**     Disputed. See response to statement #28.

31.     MBA is not contractually obligated to maintain the premises. Thypin 2021 Aff., Ex. M, ¶¶ 4-7; Ground Lease, Ex. N, §§ 6.07, 10.02.

**RESPONSE:**     Disputed. This statement improperly calls for a legal conclusion. Additionally, see response to statement #28.

32.     MBA does not have any responsibility to maintain the interior of the premises.

Thypin 2021 Aff., Ex. M, ¶¶ 4-7; Ground Lease, Ex. N, §§ 6.07, 10.02.

**RESPONSE:**          Disputed. See response to statement #28.

33.     Plaintiff's alleged incident does not involve a structural or design defect. Pl. Resp.

to First Set of Interrogatories, Ex. G, ¶ 4; Pl. Dep. Tr., Ex. H, p. 29:13-22.

**RESPONSE:**          Undisputed.

34.     Costco had and has exclusive control over the warehouse. Thypin 2021 Aff., Ex.

M, ¶¶ 4-7.

**RESPONSE:**          Disputed. See response to statement #28.

Dated:  New York, New York
        October 24, 2022

                                        Yours, etc.,

                                        McMANUS ATESHOGLOU
                                        AIELLO & APOSTOLAKOS PLLC


                                By: _____
                                        PHILIP V. AIELLO